[No. 6686.]

## Aichele v. City and County of Denver.

Constitutional Law—*Article XX Construed*—Upon the adoption of article XX of the constitution every provision of the former charter of the city of Denver, and its ordinances, in conflict with the provisions of the new article, immediately lost their effect; and it being the manifest purpose of sec. 2 of that article that all powers and duties theretofore pertaining to officers of the then county of Arapahoe, as well as those of the then city of Denver, should thereafter be exercised and performed by a single set of officers, drawing one salary, a like purpose must be asscribed to sec 3—so that the economical administration of the new body politic should begin as soon as the amendment should take effect—186-188).

The county clerk then incumbent, was not entitled to a salary as city clerk, during the period intervening between the adoption of the article, and the going into operation of the new charter adopted by the city, pursuant to its provisions—(189).

*Error to Denver District Court.*—Hon. Carlton M. Bliss, Judge.

Mr. Milton Smith, Mr. Charles R. Brock, for plaintiff in error.

Mr. N. Walter Dixon, for defendant in error.

Mr. Justice Hill delivered the opinion of the court:

The substance of the plaintiff's complaint is, that prior to and upon December 1, 1902, when article XX

of the constitution went into effect he was the county clerk and recorder of the former county of Arapahoe; that by virtue of the authority contained in section 3 of said article, after its adoption he continued to perform the duties pertaining to the former office of county clerk and recorder of said county for the new consolidated city and county of Denver, also the duties of city clerk as defined by the ordinances of the former city of Denver, until the 1st day of June, 1904, when the first charter provided for in this article went into operation; that during the above mentioned period he was paid the salary for his services as county clerk and recorder, but he was not paid for his services or salary as city clerk of the city styled the city and county of Denver; that there is due him the salary for city clerk as fixed by the old charter of the city for this eighteen months' period; he prays judgment accordingly. A demurrer was sustained to this complaint and judgment rendered dismissing the action. This is assigned as error.

As we understand the contention of the plaintiff, it is to the effect, that the merger of the city and county of Denver provided for by article XX of the constitution did not take effect until the adoption of the new charter; that when article XX of the constitution went into effect it wiped out the old city and county and created a new city and county; that the instant the new county was created there came into existence, by force of the constitution and statutes of the state, every county office existing in any other county; that by virtue of section 4 of the article which declared that, as far as applicable, the charter of the old city should become the charter of the new city styled the city and county of Denver until the adoption of a new charter, it operated instantly to create for the new city every single office which had previously existed

in the old city by the terms of the old charter, and that as section 3 of article XX of the constitution provided that the then clerk and recorder of the county of Arapahoe should become such officer for the city and county of Denver until the adoption of the new charter, he did, so and performed the duties of both offices and is entitled to the salary provided for each.

Article XX of the constitution received its latest consideration by this court in the case of *The People ex rel. v. Cassiday et al,* 50 Colo. 503, wherein, at page 507 we said, "It, as any other part of the constitution, is to be given force and effect according to its plain intent, purpose and meaning." Referring to the effect of section 3 in this article, we further said:

"Section 3 of the article, by express provision, terminated, upon its adoption, the terms of office of all officers of the then city of Denver, of the included municipalities and of the old county of Arapahoe, a portion of which, together with the city of Denver and included municipalities, were then merged into the consolidated municipality of the city and county of Denver. It in effect did away with all county officers and offices, purely as such, in the consolidated territory, and provided a single set of officers or agencies to perform, in the new municipality, all duties of a local nature and all duties pertaining to governmental, state and county affairs as well."

From the above it will be observed that the consolidation of these offices was provided for immediately upon the adoption of this article. It follows as a matter of course that any portion of the old charter or ordinances of the city in conflict with this article of the constitution would not continue in force for the reason that they would not be applicable. From the opinion last cited, it will

further be observed that under the provisions of section 2 of this article it was intended ultimately, so far as practicable, that all the powers and duties pertaining to former county offices, as well as the powers and duties of municipal offices, should be performed by one set of officers each drawing one salary; that the economy which could be thus secured was one of the chief factors in causing the adoption of this amendment. Having thus made provision for the permanent form of government, as shown by the clear intent and purpose of section 2, we are bound to conclude that a like purpose animated section 3 and that it was intended that the economical administration of the government of the new body politic, both as a county and as a city, should begin as soon as the amendment should take effect. Section 3 was intended to establish a temporary or provisional government in which it is provided that governmental, as well as all municipal powers and duties referred to, should be assumed and discharged by one set of officers; for instance, it provides that the council shall perform the duties of the board of county commissioners; here the office of county commissioner with its emoluments is clearly abolished. This precise point was decided in *Billings v. The Mayor et al,* 68 N. Y. 413, where, under the consolidation act of the city and county of New York an alderman drawing a salary as such attempted to recover also the emoluments of a county supervisor; it was held he could not do so.

In section 3 of this article it is next declared that the city engineer shall be *ex officio* county surveyor and that the chief of police shall be *ex officio* sheriff. If these provisions stood alone, there might be some room for arguing the existence of dual offices as to them, but when we come to the remaining offices, including the one in-

volved, the case is entirely different. It is provided, "the then clerk and ex officio recorder, treasurer, assessor and coroner of the county of Arapahoe, and the justices of the peace and constables holding office within the city of Denver, shall become, respectively, said officers of the city and county of Denver." It will be observed that it is not declared that the clerk and recorder shall be or become *ex officio* city clerk as such nor even that he shall perform the duties of a city clerk purely as such. It is not declared that the treasurer shall become *ex officio* city treasurer as such, nor that he shall perform the duties of the city treasurer purely as such, but that they shall become the officers of both the new city and county similar to the one which they had held as such in the old county. What was the plaintiff in error in the county of Arapahoe? County clerk and *ex officio recorder*. If then, as he contends, section 3 established a dual government with dual officers, what did he become under the new government? Said officer, that is, clerk and *ex officio* recorder. It will be observed that the word "city clerk" as such is not mentioned in the whole section, while it does enumerate the officers of the former city of Denver whose offices as such are to be retained, namely, mayor, auditor, engineer, councilmen, police magistrate, chief of police and boards; city clerk is omitted.

In the case of *Orahood v. Denver,* 41 Colo. 172, involving another city official, we held that the constitutional amendment terminating the term, necessarily implies the cessation of the salary.

If, during this *ad interim* period the two offices continued absolutely intact with the salary attached to each, we then ask, what was the object to be accomplished in thus arbitrarily providing that one person who had been elected to the office of city clerk should have it taken away

from him in order to allow another person holding another office, under the former county government, to perform the duties of both, as such, and thereby draw two salaries at the same time? If this were correct when section 3 is read as a whole it would be to say that the intent was, during this *ad interim* period, to remove certain county officers who had been duly elected, in order to enable certain city officers to draw two salaries, and to likewise remove certain city officers, in order to enable certain county officers to draw two salaries, as the whims of the legislature might dictate. It appears to us such a construction would make its provisions meaningless and unreasonable, if not reprehensible. It certainly cannot be assumed that one man could perform the duties of both officers better than the two, or that the legislature would have attempted to submit a constitutional amendment which provided that an officer elected by the people of the city should have the office taken from him simply in order to have another (selected by the legislature) draw the salary during this *ad interim* period. If a reduction in expenses had not been intended, why the necessity of providing for any reduction in the force, which, of necessity, would tend to create opposition to the adoption of the amendment? If no reduction in expenses was intended, why not have allowed the parties elected to continue to perform the duties thereof until the new charter otherwise provided?

Considering the purposes of article XX, including the phraseology of section 3, it is clear the intent was, during this *ad interim* period, that the office of city clerk as such should be abolished just the same as the offices of county commissioners were, and that the duties pertaining to this office should be transferred and attached to the office of clerk and recorder for the city and county of

Denver the same as those of county commissioners were to the city council.

It follows that the plaintiff in error held but one office during this *ad interim* period and is not entitled to extra compensation for the performance of the additional duties, if any, which were by the constitution transferred and attached to his office.

The judgment is affirmed.    *Affirmed.*

*Decision en banc.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GABBERT not participating.